Judge Greer:                                         03-24-2010

   I hope that this letter will better express my thoughts and feelings to the Court, as I'm afraid I'll be unable to do so adequately in front of a large number of people.
   I want to apologize to the victim, my family, friends, Mrs. Smith, Mr. Thornton and the Court, although saying I'm sorry feels so inadequate for all the stress and trouble I've caused everyone. I'm sure words mean very little coming from me. Hopefully, one day everyone will know I'm sincere by my present and future actions.
   It seems like I've screwed up every opportunity I've been given and hurt most everyone I come in contact with. The saying, "The road to Hell is paved with good intentions", seems like it was made for me. I've wanted to do the right thing, but always seem to make a mess out of things, then manage to dig the hole deeper by doing something immoral and illegal.

EXHIBIT 1

(1)

I often wonder how I got to this point, where I first started to go wrong. The sad truth is, I'm not sure. After my grandmother gave me another opportunity, I blew it. Once I realized that I had failed her yet again, I'm not sure whether I went into denial or simply didn't care what happened. Any rational person would know they will get caught sending ill-gotten money straight into their bank account, yet that's exactly what I did. Likewise, I knew it was wrong (not to mention illegal), but I still went through with it.

I know I don't have the right to ask the Court for anything, especially leniency, but I do hope that you will ensure that I get the therapy I need to help me change my behavior, while incarcerated and more importantly beyond. I do not want anyone else to be hurt by my actions and am committed to changing those actions so no one else will be.

Thank you for taking the time to read my letter.

*[signature]*

EXHIBIT 1

(2)

### Robert Sayne

From: adb123109@yahoo.com
To: gwblawoffice@comcast.net

Tuesday, March 23, 2010 12:52:28 PM

To whom it may concern:
Hello, my name is Amber Brown. I am Robert Sayne's little sister. Robert is one of the best brothers I could have ever ask for he is caring and loving and has always took care of me. He has always took care of our great grandmother Almeda Ellis and made sure she had everything she needed and took her wherever she needed To go dr appointments, hair appointments, eye appointments and etc... I am not asking that you excuse Robert from anything I am very aware that if he has committed a crime that he has to pay for his actions. This is why the legal system is in place. The only thing I ask is not to just throw someone away that is as smart and has as much potential that Robert does he is one of the smartest people I have ever met in my life. He is so full of life, and I really feel this time that Robert wants To change his life I myself have never gotten involved with his criminal life because I never felt that he wanted to do the right thing. This time he does he wants therapy and he wants help. I feel that if he does have help that there wouldn't be any more criminal history for Robert. He would do anything in the world for anybody To help them and is a very hard worker, and has never had any kind of violent charge or violent nature he is a very easy going person.

Thank You

Amber Brown

EXHIBIT 2

### Robert Sayne from Almeda Ellis

Thursday, March 25, 2010 5:17:47 PM

From: carolheatley@comcast.net
To: gwblawoffice@comcast.net

To Whom It May Concern:

    I Almeda Ellis great grandmother of Robert Sayne am writing to you on behalf of my great grandson. He has always been a big help to me taking me to church,and to social events and anywhere else I needed to go. He did work on things I needed around the house and anything else I needed.
    Robert decided he wanted to start a business for income so I gave him the money to get started in a detail shop business.He worked very hard in the business but the location was not good and car dealerships could not afford to hire outside workers
so Robert's business didn't make it which I feel was the reason for his actions.
    Robert has always been there for anyone that he could be a help to and  I have been blessed with him as far as him not having any use for drugs or alcohol. I feel that he could turn his life around if given another chance.

Thank You

Almeda Ellis

EXHIBIT 3

**Robert Sayne**  Tuesday, March 23, 2010 12:40:12 PM

From: adb123109@yahoo.com
To: gwblawoffice@comcast.net

Hello. My name is Poncho Brown, and I am Robert Sayne's brother n law. I have known Robby for about 22 years. I have always known Robby 2 be a very loyal and caring person he is always doing everything he can to help someone. He has always had one of the biggest hearts I have ever seen. He loves his family and friends very much. I am aware that Robert has a bad criminal history. I feel that if he could get the help he needs I feel he would change his life, and his ways. Robby has never had a violent nature he has always been very respectful and caring.

Thank You,
Poncho Brown

EXHIBIT 4

**FW: robert sayne**

From: adb123109@yahoo.com
To: gwblawoffice@comcast.net

Tuesday, March 23, 2010 1:58:44 PM

-----Original Message-----
Sent: Tuesday, March 23, 2010 1:27 PM
To: AMBER BROWN <adb123109@yahoo.com>
Subject: robert sayne


To Whom It May Concern:

I met Robert Sayne 1 time through his sister Amber Brown. I believed him to be a nice well rounded person and didn't know that he had a criminal past until I was told about it. He seemed to be a very caring person torward people he was around that day and not at all criminal like. From what I know, he is in need of some kind of therapy and I think he needs it. It would be more beneficial for him to have therapy than to be just sitting in a cell waiting around.

Sincerely,
Jennifer Cash

EXHIBIT 5

R. Sayne

From: bryan.mcpeters@gmail.com
To: gwblawoffice@comcast.net

Sunday, February 28, 2010 11:45:01 PM

To Whom it May Concern:

I met Robert Sayne online around March 2008. We chatted off an on for about four months. It was not until July 2008 that I met Rob in person. He seemed to be a regular and normal person. He was working at the detail shop in Oak Ridge. Rob seemed to have normal friends and had the same hobbies and interests as any other 30-something year old man. We both had our interests of cars as our biggest common subject. I begin hanging out with Rob and his friends at the detail shop when I was off work and on weekends. Nothing about any way that he conducted his business or acted towards his friends or family made me think anything out of the ordinary about him. From the nine months that I knew of Rob before he was detained, he was a very personable and normal acting person. He conducted his personal relationships and business relationships the same way as any other person would have. Again, he did not act in any way that would have made me think anything out of the ordinary about him or his character.

Thank you,

Bryan Kent McPeters

EXHIBIT 6

## Fwd: letter

Sunday, February 28, 2010 11:36:00 PM

From: bryan.mcpeters@gmail.com
To: gwblawoffice@comcast.net

Mr. Blackwell,

Below is one of my sister's statements regarding Rob's character.

Thanks,
Bryan K. McPeters

---------- Forwarded message ----------
From: **Tammy Clark** <tammyjo@triad.rr.com>
Date: Fri, Feb 26, 2010 at 4:00 PM
Subject: letter
To: Bryan McPeters <bryan.mcpeters@gmail.com>

To Whom It May Concern,

I met Rob Sayne through my brother, Bryan Kent McPeters. We met at a family cookout and we were around each other a few more times, including Christmas 2008. From what I knew of Rob, he seemed to be a normal, down to earth person. He got along great with all of our other family members and did nothing that made him stand out. He was able to talk and carry on normal conversations and was very courteous to everyone. My honest opinion is that he seemed like any other person you would meet. Nothing he said or did, or any of his actions would have made me think anything bad about him. I thought he was funny and a nice person. He got along great with my brother Kent, so I really didn't see any problems.

Sincerely,
Tammy Clark

EXHIBIT 7

## Robert Sayne

From: carolheatley@comcast.net
To: gwblawoffice@comcast.net

Thursday, March 18, 2010 1:57:32 PM

To Whom It May Concern :

I met Rob around 2002 at a car dealership I worked at. He brought a friend there to look at a car. He was very friendly and we agreed to get together sometime which we did go out to dinner and we have been friends since. I had no idea that Rob had done anything wrong because he seemed so straight forward to me. But he went to prison after that and we lost touch. But continued to be friends after he got out. We grew very close so I was around him a lot and I never saw or heard anything that would lead me to think he had done anything wrong. So I didn't know anything until they arrested him and that was a real shock to me. I just couldn't believe it. We had talked about his past and he said he would never go back we have continued to be friends for the time he has been in jail and I wish the best for him.

EXHIBIT 8

To Whom it my Conceren

I Anna Vierengel have knowned Robbie Jayne for a while & have never knowned him to do any drugs or alchol. he was always a very nice person

*Anna Vierengel*

EXHIBIT 9

March 23-10

To Whom it May Concern:

I had the pleasure of knowing Robbie Sayne for about a year. For a young man he was always very mannered & polite and impressed me of being a wonderful human being.

Orville J Burke Jr.
298 Black Oak Rd.
Harriman, Tn. 37748
C 865-293-8990
H 865-882-9603

EXHIBIT 10

March 22, 2010

Dear Sir:

I am writing regarding Robert Sayne whom I have known for over one year. He is a very personable young man and would go out of his way to help anyone and I would wish for good things to happen to him.

Thank you

Elizabeth Barkley
298 Black Oak Rd.
Harrison TN 37748
865-882-9603

EXHIBIT 11

# LAW OFFICE OF GUY W. BLACKWELL, P.C.
138 Saylor Road
Gray, Tennessee 37615
(423) 557-3924
Fax (423) 753-5846
E-mail gwblawoffice@Comcast.net

November 25. 2009

Pamela McNish, Ph.D.
2908 Tazewell Pike, Suite N
Knoxville, TN 37918

    Re:    U.S. vs. Robert Ray Sayne
            2:09-CR-96

Dear Dr. McNish:

    I appreciate your agreeing to conduct a psychological evaluation on Robert Ray Sayne. He is presently in federal custody at the Claiborne County Detention Center in New Tazewell, Tennessee. I have made arrangements with the U.S. Marshal's Service to give you full access to him to conduct the evaluation.

    I am enclosing several documents for your review:

    1.    Motion for Presentence Study and Report and Release Pending Sentencing. This was filed with the Court on October 29, 2009 for the presentence study under 18 U.S.C. § 3552(b) and (c) with a detailed Affidavit. The purpose of the motion was two-fold, to obtain Court approval for the evaluation and to have the Defendant released on bond to facilitate the evaluation. The Court did not release Mr. Sayne on bond, but did approve the evaluation.

    2.    18 U.S.C. § 3552(b) and (c). The statute explains the purpose and the reporting requirements to the Court. The final report is used to aid the Court at sentencing to fashion conditions and recommendations to meet the needs of the public and the Defendant under the Federal Sentencing statutes [18 U.S.C. § 3553(a), also included,] and on supervision once a defendant is released from custody.

    3.    A handwritten family and personal background prepared by Mr. Sayne. I asked him to prepare it to aid in justifying our request for the evaluation.

    4.    The presentence report in 2003 involving an earlier offense committed by the Defendant. It contains background information on that offense, his criminal history

*EXHIBIT 12*

(1)

and various personal issues. It is the basis for the supervision, like parole, Mr. Sayne was on when the current offenses were committed.

5. The Indictment and Factual bases to support his November 2, 2009 guilty plea to the offenses. Under Federal Sentencing Guidelines, the Defendant is facing 18-24 months on his supervision revocation consecutive to 33-41 months on the offenses in the Indictment. There is no parole in the federal system, so he will serve virtually the entire sentence in custody.

The following questions should help in developing the evaluation and addressing the issues the Court will evaluate at sentencing. The goal, as stated, is to see if there are any psychological issues, which help explain the decisions Mr. Sayne has made to commit the current offenses. My hope is to get him treatment and help while he is in custody at the appropriate federal facility. Hopefully he can be productive and not return to the criminal justice system in the future after he completes his sentence and while on supervision and beyond.

(a) Is the defendant suffering from a mental disease, condition, or defect? Please explain any diagnosis made. Also, explain how the defendant's behavior and thought process relates to this diagnosis. Did the defendant's mental health diagnosis contribute to the commission of the present offense and, if so, in what way?

(b) Whether defendant is suffering from a mental disease, condition, or defect as a result of which, upon the defendant's release, would create a substantial risk of bodily injury to another person or serious damage to property of another, and if so, whether there are any special conditions of supervision which you would suggest be imposed upon defendant's release into the community.

(c) Should there be a determination that the defendant does suffer from a mental disease, condition, or defect; is this condition treatable, and is the defendant receptive to treatment? Please recommend an optimal treatment regimen, which may include a prescribed medication, and any local treatment providers, both inpatient and/or outpatient.

(d) Does this treatment include medication and if so, what medication treatment regimen is recommended?

(e) Are there any recommendations as to how the mental condition of the defendant should affect the sentence and further recommend any special condition of supervision?

The sentencing is presently set for April 12, 2010. The Defendant has been in custody since late January 2009 and has been housed by the U.S. Marshal's Service in various county jails in the area. If the evaluation is completed earlier, I will ask the Court to move the sentencing up so the Defendant can be transferred to an appropriate federal facility.

2

EXHIBIT 12

(2)

The Court has approved $1,600 toward the cost of the evaluation to be paid once the evaluation and the report are completed. The Defendant's family has offered to pay the $1,400 balance toward the potential $3,000 cost, which will be immediately sent to you by separate letter. I again appreciate your willingness to do this. You came highly recommended by the U.S. Probation Office. Mr. Sayne is not trying to avoid responsibility for what he has done. He simply wants to understand his actions and get the necessary help. If I can answer any questions or provide you with any other documentation, please do not hesitate to contact me.

Sincerely,

Guy W. Blackwell
Lawyer

GWB/db

Enclosures

EXHIBIT 12

(2)